Colleen P. TIPPETT, Ruby E. Watkins Cheek, Helen D. Clayton, Joanne B. Atkins, Mary Alice Earp Duke and Eleanor O. King, Plaintiffs,

v.

LIGGETT & MYERS TOBACCO COMPANY, Local 176, Tobacco Workers International Union (AFL–CIO) and Tobacco Workers International Union, AFL–CIO, Defendants.

No. C–177–D–69.

United States District Court, M. D. North Carolina, Durham Division.

Aug. 24, 1970.

George W. Miller, Jr., Wade H. Penny, Jr., 111 Corcoran Street, Durham, N. C., for plaintiffs.

Wallace C. Tyser, Jr., Charlotte, N. C., Douglas P. Dettor, Greensboro, N. C., Larry Thomas Black, Robert G. Sanders, Charlotte, N. C., for defendants.

Russell Specter, Acting Gen. Counsel, Washington, D. C., amicus curiae.

## MEMORANDUM OPINION AND ORDER

GORDON, District Judge.

### Allegations

The plaintiffs on July 2, 1965, were female employees of the Liggett and Myers Tobacco Company ("Liggett & Myers") plant in Durham, North Carolina, and members of Local 176, Tobacco Workers International Union, AFL–CIO ("Local 176"). During that month, due to a reduction in the work force, they were laid off when males of lesser seniority who performed jobs within plaintiffs' capabilities were retained.

Between the layoff and June of 1967 when plaintiffs were recalled, Liggett & Myers and Local 176 renegotiated the seniority article of their collective bargaining agreement. Amended provisions called for installation of a "permanent rate" designed to allow employees previously segregated by race and sex to transfer among departments without reduction in wages.

The permanent rate for each employee was computed by referring to the wage earned on the majority of days in the 90-day span immediately preceding May 31, 1967, the amendment's effective date.

Plaintiffs were recalled in June, the following month, but were awarded no permanent rate because of not having worked during the specified 90-day period. Subsequently, they were placed behind employees of the lowest seniority who had a permanent rate. A filing of grievances with the Union availed no change in their situation.

In charges filed with the Equal Employment Opportunity Commission on May 18, 1968, plaintiffs alleged that they were the victims of a "continuous" discrimination because "In July, 1965, more than one week after the effective date of Title VII of the Civil Rights Act of 1964, several females * * * were laid off from the bottom of the segregated female seniority list while males with less seniority lists [sic] were not laid off. The Company now uses its own earlier unlawful discrimination * * * as an excuse to continuously repeat and multiply its further acts of unlawful discrimination. * * * The Company orally rejected my grievance and Local 176 has refused to represent me any further. I believe the Company and Union jointly intend every possible kind of discrimination in favor of white males."

All named plaintiffs filed identical charges.

Not until August 8, 1969, did the EEOC post notification to plaintiffs of their right to institute a civil suit pursuant to 706(e) of the Civil Rights Act of 1964, 42 U.S.C. 2000e–5(e).

On September 8, 1969, there was filed in this Court a two count complaint alleging the facts recited above. Count I charges a violation of Title VII of the Civil Rights Act of 1964 while Count II charges the Union with breach of its statutory duty of fair representation.

Named as defendants in Count I were Liggett & Myers, Local 176, and Tobacco Workers International Union, AFL–CIO ("International"). Defendants in Count II are the Local and International Unions.

Defendants have moved variously for dismissal of both counts, separation of Count I from Count II, and in the event the above should be denied, that several portions of the complaint and prayer for relief be striken.

For reasons hereinafter set out, all motions except that pertaining to the maintenance of Count II as a class action will be denied.

## DISCUSSION

I. Motions to dismiss Count I are based upon the grounds that (a) plaintiffs failed properly to lodge charges with the EEOC within ninety days of the act or acts about which they complain, (b) some members of the class filed no charges at any time with the EEOC and (c) the EEOC failed in its statutory duty both to investigate and attempt conciliation of the claims.

■■ (a) As a jurisdictional prerequisite to the institution of civil action under 42 U.S.C. 2000e–5, it is well settled that a complaint must first be filed with the EEOC and that it be filed within ninety days of the act or acts alleged to have been discriminatory. Bowe v. Colgate-Palmolive Co., 7 Cir., 416 F.2d 711 (1969); Mickel v. S. C. State Employment Service, 4 Cir., 377 F.2d 239 (1967), cert. den. 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967). There are instances, however, when discrimination results from a practice or pattern of action that perpetuates the effects of prior discrimination. United States by Clark v. Dillon Supply Co., 4 Cir., 429 F.2d 800 (July 8, 1970); Griggs v. Duke Power Co., 4 Cir., 420 F.2d 1225 (1970); cert. granted, 399 U.S. 926, 90 S.Ct. 2238, 26 L.Ed.2d 791 (June 29, 1970); Robinson v. P. Lorillard, C–141–G–66, 2

F.E.P. cases 465 (M.D.N.C.1970);[1] United States by Clark v. Local 189, United Papermakers & Paperworkers, 282 F.Supp. 39 (E.D.La.1968), aff'd, 5 Cir., 416 F.2d 980 (1969), cert. den. 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970). In these situations the discrimination is considered "continuous" and it is not necessary that charges be filed within ninety days of a particular act since it is deemed that the violative pattern or practice extends discrimination into the present. Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891 (D.C. Me.1970); Cox v. United States Gypsum Co., 7 Cir., 409 F.2d 289 (1969).

In the present case the pleadings allege that departments at Liggett & Myers had once been segregated on the basis of sex, that during this time plaintiffs were laid off while males of lesser seniority retained positions which might competently have been occupied by females, that as a result plaintiffs were denied a permanent rate, that when recalled they subsequently were placed behind persons of lesser seniority and that grievances filed with the Union had been to no avail.

■ If the facts are proved to be as alleged, continuous discrimination is apparent. This is not the case of a layoff with nothing more. It is a case of prior discrimination reaching effectively into the present. Placed behind all employees holding a permanent rate, plaintiffs would conceivably be subject to lower wages, greater risk of future layoff, and diminished chances of promotion and transfer.

(b) "A suit for violation of Title VII is necessarily a class action as the evil sought to be ended is discrimination on the basis of a class characteristic, i. e., race, sex, religion, or national origin." Bowe v. Colgate-Palmolive Co., *supra.*

■ In *Bowe* it was held, *inter alia,* that the underlying purposes requiring that a charge be first filed with the EEOC were to serve notice upon the charged party and "bring to bear the voluntary compliance and conciliation functions of the EEOC." It is therefore unnecessary for joinder that *every* member of the class file identical charges with the EEOC. Other persons similarly situated to the named plaintiffs are represented also in this action.

■ (c) So long as a charge has been formally presented to the EEOC and the EEOC given an *opportunity* to exercise its powers, it matters not that the powers are not actually exercised. The Commission is overburdened and its personnel is of limited number. To prejudice the individual complainant because of Commission inaction is without legal justification. Johnson v. Seaboard Airlines R.R., 4 Cir., 405 F.2d 645 (1968); Choate v. Caterpillar Tractor Co., 7 Cir., 402 F.2d 357 (1968); Cunningham v. Litton Industries, 9 Cir., 413 F.2d 887 (1969).

Plaintiffs were forwarded notice of their right to bring suit on August 8, 1969, and within thirty days from receipt of that notice, their complaint was filed. Nothing more is required here.

■ II. The defendant International Union has moved for dismissal of Count I on the ground that it was not named in the charges lodged with the EEOC.

Although it is generally held in Title VII actions that a party defendant must have been named in the charge before the EEOC, the Fourth Circuit in *Mickel, supra,* speaking to situations where one party has acted in concert with or on behalf of another that has been charged, held that it would not be necessary for the party acting as agent to be earlier named.

The plaintiffs here should be given an opportunity to complete discovery so that a relationship, if one exists, according to the standards of *Mickel* might be shown. The defendant International's motion will, therefore, be denied without prejudice.

---

1. This case is presently pending on appeal to the United States Court of Appeals for the Fourth Circuit.

■ III. With reference to Count I, defendant Liggett & Myers has moved to strike all portions of the complaint pertaining to periods more than ninety days prior to May 18, 1968, when plaintiffs first notified the EEOC of their situation. However, because patterns of conduct sometimes perpetuate the effects of prior discrimination, it becomes relevant to consider past practices, policies, and acts of the defendants in determining liability under Title VII. United States v. Dillon Supply Co., *supra*.

IV. Defendants move to dismiss Count II on the grounds that (a) it is within the original jurisdiction of the National Labor Relations Board, (b) is barred by the statute of limitations, (c) is not maintainable as a class action, and (d) has been improperly joined with Count I.

That a union owes each member of its collective bargaining unit a duty of fair representation, i. e., to act in good faith, without discrimination or arbitrariness is a concept spawned by Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) and nurtured by Ford Motor Company v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), and Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Suits against a union for violation of this duty often are associated with suits against an employer for violation of the collective bargaining agreement, arising under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).[2] This normally occurs when a member of the collective bargaining unit "charges that his union breached its duty to fairly represent him by colluding with the company to deprive him of his rights," Lusk v. Eastern Products Corpo-

ration & Local Union 75, United Furniture Workers of America, AFL–CIO, 4 Cir., 427 F.2d 705 (June 9, 1970), by discriminatorily failing to pursue, by arbitrarily ignoring or by processing in perfunctory fashion a meritorious grievance. It is not necessary, however, that these suits be combined (though problems with apportionment of damages may arise when they are not.) Vaca v. Sipes, *supra*.

■ *Vaca* laid to rest the argument that such suits fall solely within the jurisdiction of the NLRB:

"A primary justification for the pre-emption doctrine—the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose—is not applicable to cases involving alleged breaches of the union's duty of fair representation.

"[F]air representation duty suits often require review of the substantive positions taken and policies pursued by a union in its negotiation of a collective bargaining agreement and its handling of the grievance machinery; as these matters are not normally within the Board's unfair labor practice jurisdiction, it can be doubted whether the Board brings substantially greater expertise to bear on these problems than do the courts, which have been engaged in this type of review since the *Steele* decision." 87 S.Ct. at 912, 17 L.Ed.2d 852, 853."

(b) In De Arroyo v. Sindicato De Trabajadores Packing House, AFL–CIO, 1 Cir., 425 F.2d 281 [1970], the First Circuit recently held that suits for breach of the duty of fair representation are in the nature of tort and governed by the applicable statute of limitations in the state where suit is brought.

2. 29 U.S.C. § 185(a): "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

■ Plaintiffs grievance was denied by Liggett & Myers on October 4, 1967, at which time it is alleged that the union acted in bad faith by refusing to pursue it further. Since North Carolina's applicable statute of limitations is three years [3] and this suit was begun October 8, 1969, there is no merit to defendants' contention.

(c) Rule 23(a) of the Federal Rules of Civil Procedure provides in pertinent part:

> "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable * * *"

There has been no showing in this case that persons affected by the union's refusal to pursue plaintiffs' particular grievance are so numerous as to make joinder impracticable.

This is not the same situation as in Count I. There, a class action is proper because discrimination under Title VII is necessarily on the basis of a class characteristic. Title VII suits are nominated as equitable actions; unfair representation suits as tort actions.

Since damages, both actual and punitive, have been prayed for, there is a further consideration. No showing has been made that these plaintiffs can properly protect the interest of other parties who have similar claims against the union.

■ For the reasons above stated, it will be ordered that Count II be dismissed as a class action, and the names of the six plaintiffs of record be and remain the real parties in interest. Other parties claiming an interest in this action may be joined pursuant to Rule 20, Federal Rules of Civil Procedure.

■ (d) Motions to dismiss the complaint because of improper joinder of claims and to separate the claims, Count I and from Count II, will be denied. Evidence vital to the proof of one necessarily overlaps that relating to the other.

Proving that the union intended to discriminate or acted in such a way that it may be deemed to have intended the result is a prerequisite to union liability in both counts.

■ V. The motion to strike the prayer for punitive damages in Count II will also be denied.

Courts have generally held that punitive damages are not recoverable in § 301 actions. While § 301 suits are in the nature of contract, unfair representation suits are in the nature of tort. Elements necessary to prove unfair representation —subjective bad faith or arbitrary conduct—are elements normally considered when punitive damages are awarded in the ordinary tort action. Since bad faith and arbitrariness exist in varying degrees, it is conceivable that in cases of extreme conduct punitive damages should be considered in fashioning an appropriate remedy.